**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

AMERICAN FENCE COMPANY, INC., an Arizona corporation,

*Plaintiff*,

v.

AMERICAN FENCE COMPANY, LLC, a Nebraska limited liability company,

*Defendant.*

Case No. 20-1050-EFM-JBW

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff American Fence Company, Inc.'s Motion for Finding of Contempt of Stipulated Consent Judgment and for Order to Show Cause (Doc. 23). Plaintiff asserts that Defendant American Fence Company, LLC violated of the Court's Consent Judgment by continuing to use "American Fence" and similar variants in conjunction with promoting and operating its fencing-related products and services in Kansas. On October 29, 2026, the Court held a hearing on the Motion during which the Court heard arguments from the parties. The Court has considered the parties' written and oral arguments in full. For the reasons stated below, the Court denies Plaintiff's Motion.

## I. Factual and Procedural Background

On November 4, 2010, Plaintiff and Defendant entered into a Settlement Agreement (the "2010 Settlement Agreement") as part of a trademark infringement suit that Plaintiff had filed

against Defendant in the District of Kansas.[1] Under the 2010 Settlement Agreement, Defendant agreed to cease use of the terms "American Fence Company," "American Fence," or the abbreviation "AFC" within the State of Kansas.

Years later, in 2020, Plaintiff brought this suit against Defendant alleging claims under the Federal Trademark Act ("FTA"), 15 U.S.C. § 1051, and Kansas state law, for use of the prohibited terms in Kansas. Again, the parties settled the matter, this time by entering into a Stipulated Consent Judgement Order ("Consent Judgment"), which the Court issued on October 8, 2020.[2] As part of the Consent Order, Defendant agreed to comply with their Mediated Settlement Agreement, which incorporates the 2010 Settlement Agreement in full. Together, the documents prohibit Defendant from using "American Fence Company," "American Fence," or the abbreviation "AFC" "in conjunction with the promotion or sale of fencing-related products, or in conjunction with the promotion or rendering of fencing related services, within the State of Kansas." Should Defendant violate the Consent Judgment, the Mediated Settlement Agreement provides that Defendant pay a $1,500 penalty per default.

Subsequently, by at least 2024, Plaintiff identified 21 pages on Defendant's website concerning its Kansas services that utilized the term "American Fence Rental." Plaintiff also obtained photos of temporary fencing outside of the Robert J. Dole VA Medical Center in Wichita, Kansas, with placards bearing the term "American Fence Rental" in December 2025.

Plaintiff pursued two courses of action. First, on July 17, 2024, Plaintiff sued Defendant and other similarly named entities in the District of Arizona under the FTA based on the 21

---

[1] Notice of Settlement, *Am. Fence Co., Inc. v. Am. Fence. Co.*, No. 10-CV-1205-JWL-JPO (D. Kan. Dec. 3, 2010), Dkt. No. 8.

[2] Doc. 22.

webpages.[3] Second, on December 23, 2025, Plaintiff sent a notice of default to Defendant via Federal Express pursuant to their Mediated Settlement Agreement. Plaintiff asserts that the notice was received on December 26, while Defendant asserts Federal Express stated the notice would not be delivered until December 29. Regardless of when the notice was received, the 21 website pages containing "American Fence Rental" were not cured until January 12, 2026. That same morning, "American Fence Rental" remained on the fencing placards outside the VA Hospital. Plaintiff filed the present Motion on January 15, 2026, and the Court held a hearing on the matter on October 29, 2026.

## II. Legal Standard

The Court "has broad discretion in using its contempt power to require adherence to court orders," including consent judgments.[4] The moving party bears the initial burden to prove by clear and convincing evidence that (1) a valid court order exists; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order.[5] Upon doing so, the burden shifts to the defendant to show that the defendant complied with the order or that it could not comply with it.[6] Intentionality or willfulness is not required for a finding of civil contempt.[7] Nonetheless, "a party's

[3] Am. Compl., *Am. Fence Co. Inc. v. Am. Fence Co. LLC*, No. 24-CV-01759-GMS (D. Ariz. Oct. 6, 2026), Dkt. No. 52. In this suit, Plaintiff brings several claims under the FTA against Defendant, and other similarly named companies in different states who have utilized the terms "American Rent-a-Fence" and "American Fence Rental." *Id.*

[4] *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (citation and quotations omitted).

[5] *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008) (quotation marks and citation omitted).

[6] *Id.* (citation omitted).

[7] *Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 743 F. Supp. 1484, 1487 (D. Kan. 1990) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)).

good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction."[8]

## III. Analysis

Defendant does not dispute that the Consent Judgment is a valid court order, nor does Defendant dispute it had knowledge of it. Thus, the parties' substantive dispute lies in whether Defendant disobeyed the Consent Judgment through the alleged website violations and placards violation. Procedurally, Defendant also argues this Court should abstain from making this determination. The Court first addresses Defendant's abstention argument.

### A. *Colorado River* Abstention & Dual Recovery

In its Response, Defendant invokes *Colorado River* abstention to argue that Plaintiff should not be permitted to seek recovery in this case because Plaintiff currently asserts claims for relief against Defendant based on the same conduct in the District of Arizona. In pursuing two routes, Defendant argues Plaintiff impermissibly seeks dual recovery.

*Colorado River Water Conservation District v. United States*[9] provides that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation."[10] The Tenth Circuit, however, has interpreted *Colorado River* abstention to be limited to a federal court's abstention based on parallel state court proceedings, not federal ones.[11] For abstention in

[8] *Taggard v. Lorenzen*, 587 U.S. 554, 562 (2019) (citing *Young v. United States ex rel. Vuitton el Fils S.A.*, 481 U.S. 787, 801 (1987)).

[9] 424 U.S. 800 (1976).

[10] *Id.* at 817.

[11] *See Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1121–24 (10th Cir. 2018) (finding the district court erred in applying *Colorado River* in a case involving concurrent federal litigation).

concurrent federal cases, the Tenth Circuit permits a district court to consider various equitable factors, such as similarity between the claims, issues, and parties.[12]

Here, equitable factors do not counsel abstention because the claims and issues in this matter are sufficiently distinct from the District of Arizona case. While Defendant's use of "American Fence" on its webpages also serves as part of the factual basis in the District of Arizona case, the claim in this case is simply that Defendant has violated the Court's Consent Judgment. Only this Court is charged with enforcing its own Consent Judgment. Accordingly, *Colorado River* abstention does not apply, and the Court proceeds to the substantive issues raised by the parties.

### B. The Cure Provision's Meaning

At the Motion hearing, the parties raised an unbriefed but preliminary issue: whether Defendant's compliance with the Mediated Settlement Agreement's Cure Provision precludes the need to pay the $1,500 penalty per violation. Because the parties dispute the Cure Provision's meaning, the issue presents a matter of contract interpretation.[13] The Mediated Settlement Agreement contains a Kansas choice-of-law provision; thus, the Court employs Kansas law to interpret the Cure Provision.[14]

---

[12] *See id.* at 1124, 1127 (discussing how district courts should consider the first-to-file rule and other equitable considerations in deciding whether to abstain based on concurrent federal proceedings).

[13] *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) ("[A] consent decree or order is to be construed for enforcement purposes basically as a contract . . . .").

[14] "[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997). Under Kansas law, "courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 44 P.3d 364, 375 (2002). Here, the Court's Consent Judgment requires Defendant to comply with the November 4, 2010 version of the Settlement Agreement, which provides it "shall be interpreted and enforced in accordance with the laws of the State of Kansas."

Under Kansas law, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent."[15] And if the terms are plain and unambiguous, intent is determined from the language of the contract itself.[16] Even so, "[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners."[17] Kansas law "favors reasonable interpretations, and results which vitiate the purpose of the terms of an agreement to an absurdity should be avoided."[18]

Here, the Court's analysis begins and ends with the plain meaning of the Cure Provision. The Cure Provision provides:

> Defendant shall have five (5) business days from the receipt of the certified mailing to completely cure said default. If said default cannot reasonably be completely cured within the forestated five (5) business days, then the Defendant shall commence said cure within five (5) business days and diligently pursue the cure to satisfy the default.

Black's Law Dictionary defines the verb "cure" as meaning "[t]o remove one or more legal defects" or "to correct one or more legal errors."[19] Based on the term's plain meaning, effecting a cure under the Cure Provision would remove Defendant's defect and correct the legal error—Defendant's default. And there are no damages without default in contract law, or under the Mediated Settlement Agreement. Thus, the Court finds that the only reasonable interpretation of the Cure Provision is that compliance with it cures a default by Defendant, thus precluding the need to pay the $1,500 penalty.

---

[15] *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 264 (2013).

[16] *Id.* (citation omitted).

[17] *Levin v. Maw Oil & Gas, LLC*, 290 Kan. 928, 234 P.3d 805, 814 (2010) (quotation omitted).

[18] *Id.* (quotation omitted).

[19] *Cure*, *Black's Law Dictionary* (12th ed. 2024).

Attempting to offer a reasonable interpretation in its favor, Plaintiff argues that compliance with the Cure Provision only precludes Plaintiff from filing a motion for contempt against Defendant, not the need for Defendant to pay the $1,500 penalty. The Mediated Settlement Agreement does provide that "[i]f the Defendant fails to completely cure a default noticed by Plaintiff within the cure period . . . then the Plaintiff may seek relief . . . by filing a Motion to find Defendant in contempt." But what more relief beyond the $1,500 penalty could a motion for contempt achieve? At the hearing, Plaintiff conceded that the $1,500 penalty remained the same and offered only the possibility of attorneys' fees in addition thereto. No relevant document between the parties, however, mandates an award of attorneys' fees upon a finding of contempt. Generally, attorneys' fees are merely discretionary upon a finding of contempt; they are not guaranteed.[20] If the Cure Provision only precluded a motion for contempt, it would have no real meaning in terms of relief. And the term "cure" itself—defined as to remove a default—would have no meaning at all. Because "judicial interpretation should not render any term meaningless,"[21] the Court rejects Plaintiff's interpretation of the Cure Provision.

Accordingly, the Court interprets the Cure Provision to mean that upon successful compliance with it, Defendant is excused from paying the $1,500 penalty. With this interpretation in mind, the Court turns to the alleged violations.

### C. The Alleged Website Violations

Plaintiff alleges that Defendant committed 21 violations of the Consent Judgment via its 21 website pages advertising fencing services in Kansas with the term "American Fence Rental."

---

[20] *Universal Motor Oils Co.*, 743 F. Supp. at 1487 ("The award of attorneys fees and expenses to a successful movant *may* be appropriate in a civil contempt proceeding[.]" (emphasis added)).

[21] *LDF Food Grp., Inc. v. Liberty Mut. Fire Ins. Co.*, 36 Kan. App. 2d 853, 146 P.3d 1088, 1095 (2006) (citations omitted).

Defendant does not dispute the webpages reflected "American Fence"; rather, it argues it timely cured the defaults by complying with the Cure Provision.

The Cure Provision provides two ways to cure a default. First, Defendant can cure a default by remedying the issue within five days of receiving Plaintiff's notice. Second, if the default cannot "reasonably be completely cured" within the five-day period, Defendant can cure a default by commencing the cure within the five-day period and diligently pursuing the cure to satisfy the default.

Before analyzing whether Defendant complied with the Cure Provision, the Court must determine when the five-day period occurred. Plaintiff sent a notice of default to Defendant on December 23, 2025, via Federal Express, right before the holiday season. As the Court remarked at the Motion hearing, it considers Plaintiff's decision a "dirty trick" to ensure Defendant would be unable to cure the alleged violations within five business days. This is particularly emphasized by Plaintiff taking issue with the alleged website violations as early as July 17, 2024, when it filed the District of Arizona case based on the same conduct, yet waiting until the holiday season of 2025 to involve the Consent Judgment. The Court is unwilling to permit Plaintiff to take advantage of what is supposed to be a season of kindness and generosity. Thus, the Court considers January 5, 2026, the relevant starting point for its analysis.

On January 5, 2026, Defendant had not yet cured the alleged website violations. But the Court finds that the alleged defaults could not reasonably be completely cured within the Cure Provision's initial timeframe. Again, it was the holiday season when businesses do not operate on a normal schedule. And the ongoing District of Arizona case presented a unique challenge to curing the alleged website violations as Defendant had a duty to preserve the webpages for that litigation. Plaintiff argues Defendant could have simply printed PDF copies of the webpages, but Defendant

points out that preserving webpages also includes preserving the associated metadata, complicating the process. It is unreasonable to expect Defendant to have successfully done so on Plaintiff's schedule. Thus, the question becomes whether Defendant complied with the Cure Provision's second half by commencing the cure within the five-day provision and diligently pursuing the cure.

Defendant began the process of curing well before January 5, 2026, when its counsel communicated the issue to Defendant's CEO via email on December 24, 2025, and spoke with Defendant's CEO about the issue via phone on December 26. Emails from Defendant's counsel also confirm that Defendant was actively pursuing the cure following January 5, 2026. Defendant successfully cured the offending website violations by January 12, 2026. Under the circumstances—the holiday season and duty to preserve—Defendant diligently pursued the cure to satisfy its default. Thus, Defendant complied with the Cure Provision and eliminated these defaults. Accordingly, Defendant is not in contempt of the Consent Judgment based on the alleged website violations.[22]

**D. The Alleged Placards Violation**

Plaintiff also alleges that Defendant committed one violation of the Consent Judgment via the placards on the fencing outside of the VA Hospital in Wichita, Kansas, reflecting the term "American Fence Rental." Defendant disagrees, arguing it sold and shipped the offending fencing to a site in Oklahoma where Defendant is permitted to use the term "American Fence Company," and is not responsible for the placards' subsequent appearance in Kansas.

[22] Because the Court finds Defendant is not in contempt for the website violations, it need not reach the parties' alternative argument concerning the number of website violations Defendant committed.

Plaintiff contends that Defendant's argument is based on an inadmissible affidavit, which was not sworn "under penalty of perjury" in violation of 28 U.S.C. § 1746.[23] But Defendant's argument is also based on exhibits that Plaintiff does not challenge the validity of, including the order, picking slip, and invoice for the fencing at issue. These exhibits show that this fencing was shipped to a construction site in Oklahoma.

Despite being shipped to Oklahoma, Plaintiff argues that Defendant's sale still violates the Consent Judgment because Defendant sold the fencing to a Kansas-based company, as reflected by the billing address on the order. Plaintiff's interpretation would essentially require Defendant to screen for and discriminate against companies based in Kansas, even if they do business outside the state. The Court declines to adopt such a burdensome interpretation of the Consent Judgment. Once shipped to Oklahoma, Defendant no longer had control over where the offending fencing placards went. Accordingly, Defendant is not in contempt of the Consent Judgment based on the alleged placards violation.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Finding of Contempt (Doc. 23) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[23] 28 U.S.C. § 1746(2).